UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| JACKSON COUNTY, MISSOURI, individually and on behalf of a class of others similarly situated, <br><br> Plaintiff, <br><br> vs. <br><br> TRINITY INDUSTRIES, INC., and TRINITY HIGHWAY PRODUCTS, LLC, <br><br> Defendants. | Case No. 4:16-cv-0004-FJG |

### SUGGESTIONS IN SUPPORT OF PLAINTIFF'S MOTION TO REMAND

Plaintiff Jackson County, Missouri ("Plaintiff"), by and through undersigned counsel, and for its Suggestions in Support of Plaintiff's Motion to Remand, states as follows:

### I. INTRODUCTION

As alleged in Plaintiff's Class Action Petition (the "Petition"), the amount in controversy on Plaintiff's claims does not exceed the sum or value of $75,000, exclusive of interest and costs. When it filed the Petition, Plaintiff had already removed and replaced all of the guardrail end terminals at issue in this action—the "modified ET-Plus" guardrail end terminals, which are characterized by 4-inch wide feeder chutes—from the roads it owns and maintains. The cost to Plaintiff to remove and replace the modified ET-Plus end terminals was $70,000. Put simply, the amount in controversy is demonstrably less than $75,000, exclusive of interest and costs. The Court lacks subject matter jurisdiction, and this case must be remanded.

## II. BACKGROUND FACTS

1. Plaintiff's Public Works Department maintains approximately 425 miles of road in the unincorporated area of Jackson County. (Ex. 1[1], ¶ 3.) The Public Works Department is not responsible for maintaining federal interstate and U.S. highways, Missouri state highways, or municipal roadways within Jackson County's borders. (*Id.*) The Public Works Department is not responsible for maintaining roadways outside of Jackson County. (*Id.*)

2. As alleged in the Petition, Defendants Trinity Industries, Inc. and Trinity Highway Products, LLC (collectively, "Defendants" or "Trinity") manufacture, market, and sell guardrail end terminal systems. (ECF No. 1-1, ¶¶ 23-27.)

3. Guardrail end terminal systems are attached to guardrails to prevent or reduce the risk of injury or death to vehicle occupants and others in the event a vehicle collides with the end of the guardrail. (ECF No. 1-1, ¶ 17.) Guardrail end terminal systems like those at issue in this case consist of three relevant components: (a) an impact plate; (b) an extruder chamber; and (c) a feeder channel or feeder chute. (*Id.*, ¶ 20.)

4. In the early 2000's, Trinity manufactured, marketed, and sold a guardrail end terminal system known as the ET-Plus, which is characterized by a 5-inch wide feeder chute (the "original ET-Plus"). (ECF No. 1-1, ¶¶ 24-25, 28.) Sometime before December 31, 2005, Trinity redesigned the original ET-Plus, and modified certain of its critical dimensions, including the width of the feeder chute, which was reduced to 4-inches (the "modified ET-Plus"). (*Id.*, ¶¶ 25, 28-30.) Trinity subsequently manufactured and sold the modified ET-Plus without giving any

---

[1] Attached hereto as Exhibit 1 is a true and correct copy of the Declaration of Earl Newill, Chief Engineer and Deputy Director of the Jackson County, Missouri, Public Works Department.

2

notice or indication to the marketplace that the critical dimensions of the modified ET-Plus were different than those of the original ET-Plus.  (*Id.*, ¶ 27.)

5. As a result of Trinity's changes to the design of the original ET-Plus, the modified ET-Plus is defective, unsafe, and unreasonably and inherently dangerous.  (ECF No. 1-1, ¶¶ 33-34.)

6. Sometime prior to January 16, 2015, the Chief Engineer and Deputy Director of Plaintiff's Public Works Department, and one of the department's civil engineers, reviewed contract materials and other records to determine the number and location of all the ET-Plus guardrail end terminals with 4-inch wide feeder chutes that existed on roadways owned and maintained by Plaintiff.  (Ex. 1, ¶ 4.)  On January 16, 2015, those same persons physically inspected the roadways owned and maintained by Plaintiff for the purpose of identifying the ET-Plus guardrail end terminals with 4-inch wide feeder chutes, and confirming the number and location of those devices on roadways owned and maintained by Plaintiff.  (*Id.*)  The January 16, 2015, inspection confirmed that there were twenty (20) ET-Plus guardrail end terminals with 4-inch wide feeder chutes in use on roadways owned and maintained by Plaintiff.  (*Id.*, ¶ 5.)

7. After the inspection, Plaintiff made the decision to remove and replace the twenty (20) ET-Plus guardrail end terminals with 4-inch wide feeder chutes and, on August 31, 2015, awarded a contract for the removal and replacement of those ET-Plus guardrail end terminals, at a contract price of $3,500 per unit.  (Ex. 1, ¶¶ 7-8, 11.)  Work to remove and replace the twenty (20) ET-Plus guardrail end terminals with 4-inch wide feeder chutes began on October 26, 2015, and was completed on October 30, 2015.  (*Id.*, ¶ 9.)  The total cost to Plaintiff to remove and replace the twenty (20) ET-Plus guardrail end terminals with 4-inch wide feeder chutes was $70,000, which Plaintiff paid in full as of December 10, 2015.  (*Id.*, ¶ 11.)

8. On November 5, 2015, Plaintiff filed the Petition seeking to recover the cost it incurred to remove and replace the twenty (20) ET-Plus guardrail end terminals with 4-inch wide feeder chutes, i.e., the modified ET-Plus end terminals.

9. The work to remove and replace the twenty (20) ET-Plus guardrail end terminals with 4-inch wide feeder chutes has been completed, and there is no additional work to be performed or charges to be incurred in that respect. (Ex. 1, ¶ 12.) Thus, the $70,000 Plaintiff paid for the removal and replacement of the twenty (20) ET-Plus guardrail end terminals with 4-inch wide feeder chutes is fixed and certain. (*Id*.) It is not subject to increase or change. (*Id*.)

### III. STANDARD FOR DECISION

"[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction may be removed by the defendant or defendants." 28 U.S.C. § 1441(a). Thus, "[a] defendant's removal of a case to federal court is appropriate 'only if the action originally could have been filed there.'" *Junk v. Terminix Intern. Co.*, 628 F.3d 439, 444 (8th Cir. 2010). "Where the defendant seeks to invoke federal jurisdiction through removal … it bears the burden of proving that the jurisdictional threshold is satisfied." *Bell v. Hershey Co.*, 557 F.3d 953, 956 (8th Cir. 2009). "A plaintiff may move to remand the case if the district court lacks subject matter jurisdiction." *Junk*, 628 F.3d at 444. "If it appears that the case was not properly removed because it was not within the original subject matter jurisdiction of the United States district courts, the district court *must* remand the case to the state court from which it was removed." *Neighbors v. Muha*, No. 05-472-CV-W-GAF, 2015 WL 2346968, at *1 (W.D. Mo. Sept. 26, 2005) (emphasis added); *see also Filla v. Norfolk Southern Ry. Co.*, 336 F.3d 806, 809 (8th Cir. 2003) ("The language of [28 U.S.C. §] 1447(c) mandates *a remand of the case* … whenever the district court concludes that subject-matter jurisdiction is nonexistent."). "Federal courts are to 'resolve all

4

doubts about federal jurisdiction in favor of remand.'" *Dahl v. R.J. Reynolds Tobacco Co.*, 478 F.3d 965, 968 (8th Cir. 2007).

## IV. ARGUMENT

Defendants assert traditional diversity jurisdiction under 28 U.S.C. §1332(a) as the sole basis for removal. (*See* ECF No. 1, ¶¶ 9-10.) In so doing, Defendants contend that both the amount of compensatory damages, and the value of the declaratory relief Plaintiff seeks will exceed $75,000. (*Id.*, ¶ 15.) Defendants are wrong.

### A. The Amount in Controversy Does Not Exceed the Sum or Value of $75,000.

"District courts have original jurisdiction over all civil actions where the adverse parties are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs." *Neighbors*, 2005 WL 2346968, at *1 (citing 28 U.S.C. § 1332). "[F]or purposes of determining the amount in controversy, the value of declaratory relief is measured by the value of the object of the litigation." *Good v. Ameriprise Financial, Inc.*, 248 F.R.D. 560, 574 (D. Minn. 2008).

Plaintiff's allegation, that the amount in controversy is less than $75,000, is not, as Defendants' contend, a "bald disclaimer." (ECF No. 1, ¶ 17.) Nor is it Plaintiff's "subjective measure" of the value of the prayed for declaratory relief. (*Id.*, ¶ 23.) It is a statement of objective fact.

Only the modified ET-Plus guardrail end terminals—those ET-Plusses with 4-inch wide feeder chutes—are at issue in this case. That is, Plaintiff seeks to recover only the cost it incurred to remove and replace the modified ET-Plus end terminals that were used on roadways *Plaintiff* owns and maintains. Thus, whether through compensatory damages or a declaratory judgment, the object of this litigation, and consequently the sum or value of Plaintiff's claims, is the same for purposes of determining the amount in controversy; it is the cost Plaintiff incurred to remove and

5

replace the modified ET-Plus end terminals—those with 4-inch wide feeder chutes—from roadways Plaintiff owns and maintains. S*ee Good*, 248 F.R.D. at 574.

Before it filed the Petition, Plaintiff identified all of the modified ET-Plus guardrail end terminals in use on the approximately 425 miles of roads Plaintiff owns and maintains in Jackson County. Before it filed the Petition, Plaintiff also had all of the modified ET-Plus end terminals on roadways it owns and maintains removed and replaced at a cost of $70,000. There is no more work to perform, so Plaintiff will incur no additional costs with respect to removing and replacing the modified ET-Plus end terminals on roadways Plaintiff owns and maintains. The amount in controversy, therefore, does not, and will not, exceed $75,000 on Plaintiff's claims. And, the fact that Plaintiff brought this case as a class action does nothing to change that result. *See Kessler v. National Enterprises, Inc.*, 347 F.3d 1076, 1078 (8th Cir. 2003) ("Although the class members' claims satisfy the jurisdictional amount in the aggregate, it appears to a legal certainty … that none of the named class members' claims satisfies the jurisdictional amount individually. As a result, we have no choice but to remand this case to the district court, with directions to remand it to the state court from which it was removed.")

### B. Defendants Fail to Meet Their Burden of Proving the Amount in Controversy Exceeds $75,000.

"[T]he party seeking removal based on diversity of citizenship bears the burden of proving, by a preponderance of the evidence, that the matter in controversy 'exceeds the sum or value of $75,000.'" *Usery v. Anadarko Petroleum Corp.*, 606 F.3d 1017, 1018 (8th Cir. 2010). "To meet its burden of demonstrating that the amount-in-controversy requirement has been satisfied, the removing party must present *specific* facts or evidence." *Neighbors*, 2005 WL 2346968, at *2 (emphasis added).

6

Defendants' contention that the amount in controversy exceeds the jurisdictional minimum rests exclusively on generalized evidence of: (1) the number of orders taken since 2006 for the purchase of 3,986 ET-Plus end terminals having some Jackson County connection (be it a purchaser's address, a delivery address, or some reference to Jackson County in the "Project Information"); and (2) the average cost of purchasing a replacement device. (*See* ECF No. 1, ¶¶ 19, 21-22.) Defendants also offer evidence of the number of orders taken since 2006 for the purchase of 42,711 ET-Plus end terminals having some general connection to the State of Missouri. (*See id.*, ¶ 20.) At best, Defendants' evidence establishes that some person or entity, other than Plaintiff, with an address or other physical presence within the geographical boundaries of Jackson County or, more broadly, within the State of Missouri, purchased, received, and/or used ET-Plus end terminals in general.

Defendants' "evidence," and the argument founded on it, ignores the fact that Plaintiff's claims relate only to the *modified ET-Plusses on roadways owned and maintained by Plaintiff*. Defendants offer no evidence of how many of the 46,697 ET-Plus end terminals referenced were original, as opposed to modified ET-Plus end terminals, i.e., ET-Plus end terminals with 4-inch wide feeder chutes. Defendants offer no evidence or other specific facts tending to prove how many, if any, ET-Plus end terminals generally, let alone modified ET-Plus end terminals specifically, were purchased either by Plaintiff, or for use on roadways Plaintiff owns and maintains. These are critical omissions, given that Plaintiff's claims relate only to modified ET-Plus end terminals on roadways Plaintiff owns and maintains. Absent those specific facts, Defendants' evidence is insufficient to establish the necessary nexus to Plaintiff or its claims, and does nothing but invite speculation and conjecture.

Moreover, when determining whether the amount in controversy is satisfied, the Court's inquiry is limited to considering only the sum or value of Plaintiff's claims. *Kessler*, 347 F.3d at 1078. Plaintiff is not responsible for maintaining every municipal, state, and federal roadway located within Jackson County's geographical borders. Plaintiff is also not responsible for maintaining roadways outside of Jackson County's geographical borders. For purposes of determining the amount in controversy, therefore, evidence of the number of ET-Plus end terminals in use on roads owned and maintained by a municipality, another county, or the state of Missouri, and evidence of the cost to remove and replace them is irrelevant.

In sum, the amount in controversy required to invoke diversity jurisdiction under 28 U.S.C. § 1332(a) is not satisfied. The cost Plaintiff incurred to remove and replace the modified ET-Plus end terminals from roadways it owns and maintains is $70,000. That amount is fixed and certain, has been paid in full, and is not subject to change. Because that amount does not exceed $75,000, the Court lacks subject matter jurisdiction. Plaintiff's motion should be granted, and this case remanded to the Circuit Court of Jackson County, Missouri, at Independence.

V. **CONCLUSION**

Because the amount in controversy is less than $75,000, exclusive of interest and costs, as a matter of objective and demonstrable fact, and because Defendants failed to come forward with specific facts and evidence to prove otherwise, this Court lacks subject matter jurisdiction over Plaintiff's claims. Plaintiff's Motion to Remand should be granted.

Dated: January 22, 2016

Respectfully submitted,

**MILLER SCHIRGER, LLC**

/s/ Matthew W. Lytle
John J. Schirger         MO Bar #60583
Matthew W. Lytle      MO Bar #59145
4520 Main Street, Suite 1570
Kansas City, Missouri 64111
Telephone:      (816) 561-6500
Facsimile:       (816) 561-6501
E-mail:          jschirger@millerschirger.com
E-mail:          mlytle@millerschirger.com

- AND -

**WAGSTAFF & CARTMELL LLP**
Tom Wagstaff, Jr.      MO Bar #50237
Jack T. Hyde          MO Bar #63903
Mallory Vandyke      MO Bar #66110
4740 Grand Avenue, Suite 300
Kansas City, Missouri 64112
Telephone:      (816) 701-1100
Facsimile:       (816) 531-2372
E-mail:          t.l.wagstaff@wcllp.com
E-mail:          jhyde@wcllp.com
E-mail:          mvandyke@wcllp.com

ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

  I hereby certify that on January 22, 2016, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following counsel of record:

Mark A. Beatty
Thompson Coburn LLP
One US Bank Plaza, Suite 2700
St. Louis, MO  63101
Email:  mbeatty@thompsoncoburn.com

Elizabeth D. Scott
Michelle A. Reed
Aking Gump Strauss Hauer & Feld LLP
1700 Pacific Avenue, Suite 4100
Dallas,  TX 75201
Email:  edscott@akingump.com
Email:  mreed@akingump.com

ATTORNEYS FOR DEFENDANTS

                /s/ Matthew W. Lytle
                Attorney for Plaintiff